BOUVERETTE v WESTINGHOUSE ELECTRIC CORPORATION

Docket No. 219451. Submitted April 10, 2001, at Detroit. Decided April 20, 2001, at 9:10 A.M. Leave to appeal sought.

Beverly Bouverette, as personal representative of the estate of David Bouverette, brought an action in the Huron Circuit Court against Westinghouse Electric Corporation, Hy Tek Systems, Inc., and Medar, Inc., seeking damages in the alleged electrocution death of the decedent while he was working on a control panel that was manufactured by Medar, contained circuit breakers manufactured by Westinghouse, and controlled an industrial welding machine that was designed, built, and sold by Hy Tek. The plaintiff alleged against Westinghouse negligent design, manufacture, and failure to warn and breach of implied warranty of fitness. Before trial, the plaintiff settled with Hy Tek and Medar. Following plaintiff's proofs at the trial of the claims against Westinghouse, the court, M. Richard Knoblock, J., allowed the plaintiff to add a claim of breach of express warranty. The jury thereafter returned a special verdict form in which it found that Westinghouse was not negligent in the design or manufacture of the circuit breaker at issue, but that it had breached an express warranty and the implied warranty of fitness for a particular purpose. The jury awarded damages for both economic and noneconomic losses and found that the decedent was thirty percent at fault. The court denied Westinghouse's motion for judgment notwithstanding the verdict or for a new trial. The defendant appealed.

The Court of Appeals *held*:

1. Although a plaintiff seeking recovery on a claim of breach of implied warranty of fitness where the claim is based on an allegation of defective design must present proofs that permit the trier of fact to make an assessment of the risks and utility of safer designs compared with the risk and utility of the design chosen, such proofs by the plaintiff and such analysis by the trier of fact are not required where the claim of breach of implied warranty is based on a failure to warn. Because there was ample evidence to establish a prima facie case of breach of implied warranty on the basis of a failure to warn, the trial court properly denied Westinghouse's

motions for a directed verdict and for judgment notwithstanding the verdict.

2. The privity requirement of the Michigan enactment of the Uniform Commercial Code is inapplicable to a products liability action based on breach of express warranty. Accordingly, the plaintiff did not have to establish privity of contract in order to recover on the basis of breach of express warranty.

3. The trial court did not err in denying Westinghouse a new trial, which Westinghouse sought on the basis that the jury's finding that Westinghouse was not negligent in the design or manufacture of the circuit breaker was inconsistent with the jury's finding of a breach of an implied warranty of fitness for a particular purpose. The instructions regarding negligence were expressed in terms of negligent design or manufacture, with no mention of failure to warn, and the only mention of liability on the basis of failure to warn was in the court's instruction regarding breach of implied warranty. Given those instructions, the jury could have logically found both liability on the basis of a failure to warn, and thus a breach of implied warranty, and that the defendant had not negligently designed or manufactured the breaker, and thus found no liability on the negligence count.

4. The trial court did not abuse its discretion in permitting an expert witness for the plaintiff to testify with respect to the circuit breaker's compliance with a certain industry safety standard.

5. The trial court's specific instructions concerning the failure to warn, when read in conjunction with the standard jury instruction regarding breach of implied warranty, adequately and fairly presented the parties' theories and the applicable law.

6. The trial court properly held that the jury's verdict neither was against the manifest weight of the evidence nor was improperly influenced by sympathy, passion, or prejudice.

7. Westinghouse's contentions concerning the trial court's failure to make certain adjustments to the jury's verdict before reducing the verdict to a judgment need not be addressed because they were not presented in Westinghouse's statement of the questions presented and, thus, were not properly presented for appellate review.

Affirmed.

PRODUCTS LIABILITY — BREACH OF IMPLIED WARRANTY — DEFECTIVE DESIGN — RISK-UTILITY BALANCING TEST — FAILURE TO WARN.

A plaintiff seeking recovery on a claim of breach of implied warranty of fitness for a particular purpose where the claim is based on an allegation of defective design must present proofs that permit the

> trier of fact to make an assessment of the risks and utility of safer designs compared with the risk and utility of the design chosen; such proofs by the plaintiff and such analysis by the trier of fact are not required where the claim of breach of implied warranty is based on an allegation of a failure to warn.

*Anderson & Wonch, P.C.* (by *Nancy A. Wonch*) and *Hay & O'Rourke, P.C.* (by *Thomas H. Hay*), for the plaintiff.

*Ogne, Alberts & Stuart, P.C.* (by *Wayne L. Ogne* and *Michael A. Ross*) and *Benesch, Friedlander, Coplan & Aronoff LLP* (by *Mark D. Tucker* and *Marc S. Blubaugh*), for the defendant.

Before: HOLBROOK, JR., P.J., and HOOD and NEFF, JJ.

PER CURIAM. In this wrongful death and products liability action, defendant[1] Westinghouse Electric Corporation (herein "defendant") appeals as of right the circuit court's entry of judgment in favor of plaintiffs after a jury verdict awarding plaintiff $499,610.90 following the death of her husband in an industrial accident. We affirm.

I

Plaintiff's decedent husband, forty-one-year-old David Bouverette, was employed as a journeyman electrician by Sebewaing Industries, Inc., an automotive parts stamping company. On June 7, 1995, Bouverette died of an apparent electrocution while working on a control panel manufactured by defendant Medar, Inc., which contained circuit breakers manufactured by defendant. The panel controlled an

---

[1] The remaining defendants are not participating in this appeal.

industrial welding machine, designed, built, and sold by defendant Hy Tek Systems, Inc.

On March 27, 1996, plaintiff filed the instant wrongful death and products liability action against defendants Westinghouse and Hy Tek, alleging, against Westinghouse, negligent design, manufacture, and failure to warn and breach of implied warranty of fitness (defective design and manufacture and inadequate warnings).[2] Hy Tek subsequently moved to file a third-party complaint, under MCR 2.204, against defendant Medar, Inc., seller of the electrical control panel to Hy Tek, following which plaintiff filed an amended complaint, alleging negligence and breach of implied warranty against Medar.

Before trial, plaintiff settled with Hy Tek for $75,000 and with Medar for $35,000. The jury returned a verdict for plaintiff on the claims of breach of implied warranty and breach of express warranty. However, the jury found in favor of defendant on the claim of negligence. The jury awarded damages of $111,817 for economic losses and $750,000 for noneconomic losses. The jury found Bouverette thirty percent at fault and defendant seventy percent at fault, resulting in a final judgment of $499,610.90. The court denied defendant's motion for judgment notwithstanding the verdict (JNOV) or a new trial.

II

Defendant argues that plaintiff failed to establish a prima facie case of breach of implied warranty in the absence of risk-utility evidence, required for claims

---

[2] At the conclusion of plaintiff's proofs, the trial court granted plaintiff's motion to add a claim of breach of express warranty.

under either defective design or failure to warn,[3] and, thus, that the trial court erred in denying defendant's motions for a directed verdict and JNOV. We disagree.

We review de novo the grant or denial of a directed verdict and a trial court's decision on a motion for JNOV. *Forge v Smith*, 458 Mich 198, 204; 580 NW2d 876 (1998); *Meagher v Wayne State Univ*, 222 Mich App 700, 708; 565 NW2d 401 (1997).

Our courts have stated that negligence and breach of implied warranty may, in certain factual contexts, involve the same elements and proofs, both in a failure to warn claim, *Smith v E R Squibb & Sons, Inc*, 405 Mich 79, 88; 273 NW2d 476 (1979), and in a design defect claim, *Prentis v Yale Mfg Co*, 421 Mich 670, 692; 365 NW2d 176 (1984). Nonetheless, the theories of negligence and implied warranty remain separate causes of action with different elements. *Lagalo v Allied Corp*, 457 Mich 278, 287, n 11; 577 NW2d 462 (1998).

Although in a design defect case the trier of fact must apply "a risk-utility balancing test that considers alternative safer designs and the accompanying risk pared [sic] against the risk and utility of the design chosen," *Gregory v Cincinnati, Inc*, 450 Mich 1, 13; 538 NW2d 325 (1995), no such specific analysis is required in a failure to warn case. In discussing the importance of risk-utility balancing with regard to the proper scope of warnings, this Court in *Dunn v Lederle Laboratories*, 121 Mich App 73, 80; 328 NW2d 576 (1982), expressly stated that the adequacy of a warn-

---

[3] Defendant's claim on appeal concerning plaintiff's failure to establish a prima facie case of negligence is moot because the jury found in favor of defendant with respect to these issues, and plaintiff has not filed a cross-appeal.

ing is an issue of reasonableness, and reasonableness is a question of fact. Thus, plaintiff did not fail to establish a prima facie case of breach of implied warranty in failing to satisfy a risk-utility analysis.

When a products liability action is premised on a breach of implied warranty of fitness, the plaintiff must prove that a defect existed at the time the product left the defendant's control, which is normally framed in terms of whether the product was " 'reasonably fit for its intended, anticipated or reasonably foreseeable use.' " *Gregory, supra* at 34, quoting *Elsasser v American Motors Corp*, 81 Mich App 379, 384; 265 NW2d 339 (1978); see also *Lagalo, supra* at 286, n 9.

There was ample evidence to establish a prima facie claim of breach of implied warranty premised on failure to warn. Plaintiff presented evidence that the breaker did not make or break simultaneously as intended when used with an external linkage handle. Further, defendant's instruction and installation manual did not provide a warning in this regard. There was testimony that the manual contained other warnings to electricians and should have warned of the external linkage problem or that the breaker itself should have had a warning label to that effect. Electricians relied on the breaker to shut off power by breaking simultaneously when the handle was in the off position, as did Medar in installing the indicator lights. This evidence presents a question of fact whether defendant's failure to warn of this condition was reasonable given the risk of electrocution. See *Hatfield v St Mary's Medical Center*, 211 Mich App 321, 325; 535 NW2d 272 (1995).

Further, given the evidence, the jury could have found a breach of implied warranty because it was foreseeable that the breaker would be used with the linkage and yet, when one leg of the breaker fused, the breaker handle could be placed in the off position even though electricity was still flowing. The jury could have found that the breaker failed to break simultaneously, as it was intended to do, when the linkage handle was placed in the off position. Thus, the jury verdict must stand. *Severn v Sperry Corp*, 212 Mich App 406, 412; 538 NW2d 50 (1995).

III

Defendant argues that plaintiff's express warranty claim fails because plaintiff did not establish privity of contract, as required under the Uniform Commercial Code (UCC), MCL 440.2313 and 440.2318. Plaintiff contends that the UCC is inapplicable in a personal injury action. We agree that the UCC requirements are inapplicable in this case.

Our courts have distinguished between actions in tort, seeking redress for personal injury, and those based in contract, involving a commercial loss. See *Neibarger v Universal Cooperatives, Inc*, 439 Mich 512; 486 NW2d 612 (1992); *Crews v General Motors Corp*, 400 Mich 208, 226-228; 253 NW2d 617 (1977). Since 1965, our courts have recognized that privity is unnecessary with respect to an injured bystander's right of recourse against a manufacturer on the theory of breach of warranty and negligence. *Glittenberg v Doughboy Recreational Industries (On Rehearing)*, 441 Mich 379, 388, n 8; 491 NW2d 208 (1992); *Piercefield v Remington Arms Co, Inc*, 375 Mich 85, 98; 133 NW2d 129 (1965). Although in 1978 the Legislature

codified the law governing products liability actions, MCL 600.2945, the distinctions between tort and contract liability remain.

This Court has recognized a products liability claim premised on breach of express warranty where the plaintiff, a quality control inspector who was injured on the job, sued the seller/manufacturer of a polyester strap that broke when the plaintiff was securing a palletized load of parts, on facts analogous to those in this case. *Scott v Illinois Tool Works, Inc*, 217 Mich App 35, 37, 41-43; 550 NW2d 809 (1996). The plaintiff's express warranty claim was based on a price quotation and specification references for the sale of the strap between one of the defendants and the plaintiff's employer. *Id*. at 42. This Court affirmed the trial court's denial of a directed verdict on the express warranty claim. *Id*. at 41, 43; see also *Reid v Volkswagen of America*, 512 F2d 1294, 1297 (CA 6, 1975) (under Michigan law, the privity requirement of the Michigan UCC is inapplicable to a products liability action based on express warranty). Privity of contract was not a prerequisite to plaintiff's express warranty claim.

IV

Defendant argues that the jury's verdict is inconsistent as a matter of law because the jury found no negligence, but did find breach of implied warranty, and an implied warranty cannot be breached absent negligence. We disagree.

" '[I]f there is an interpretation of the evidence that provides a logical explanation for the findings of the jury, the verdict is not inconsistent.' " *Lagalo, supra*

at 286, quoting *Granger v Fruehauf Corp*, 429 Mich 1, 7; 412 NW2d 199 (1987). A court must look beyond the legal principles underlying the plaintiff's causes of action and carefully examine how those principles were argued and applied in the context of the case. *Lagalo, supra* at 284.

In this case, the court's instructions to the jury provide a plausible explanation for the finding of a breach of implied warranty, but no negligence, on the basis of a failure to warn. The instructions on negligence were expressed in terms of negligent design or manufacture, with no mention of failure to warn. The only mention of failure to warn liability was in the court's instruction on breach of implied warranty.

Given the instructions, it is plausible that the jury found liability on the basis of a failure to warn, and thus found a breach of implied warranty, but did not find that defendant negligently designed or manufactured the breaker, and therefore found no negligence. This is particularly so in this case, given the parties' emphasis on an external linkage as the source of the problem, because defendant was not the manufacturer of the linkage.

Moreover, the jury could have found that the breaker itself technically was not defective, but that it was not reasonably fit for the uses intended or foreseeable, i.e., the safety features failed when connected to a linkage handle, which was an intended or foreseeable use. Because the factual situation in this case so closely coincides with the specific language of implied warranty, the jury's findings are logical and consistent. " '[I]t is fundamental that every attempt must be made to harmonize a jury's verdicts. Only where verdicts are so logically and legally inconsis-

tent that they cannot be reconciled will they be set aside.' " *Clark v Seagrave Fire Apparatus, Inc*, 170 Mich App 147, 153; 427 NW2d 913 (1988), quoting *Granger, supra* at 9.

V

Defendant claims that the trial court erred in permitting Michael Shanblatt to testify concerning the breaker's compliance with UL 489 because Shanblatt's limited familiarity with the design of circuit breakers and UL 489 rendered him unqualified, and further claims that Shanblatt's confusing testimony distorted the issue whether the breaker operated as intended. We disagree.

The qualification of an expert witness, and the admissibility of the expert testimony, are within the trial court's discretion, and the trial court's decision will not be reversed absent an abuse of discretion. *Mulholland v DEC Int'l Corp*, 432 Mich 395, 402; 443 NW2d 340 (1989). Under MRE 702, an expert may be qualified by virtue of his knowledge, skill, experience, training, or education. *Mulholland, supra* at 403. Michigan endorses a broad application of these requirements in qualifying an expert. *Grow v W A Thomas Co*, 236 Mich App 696, 713; 601 NW2d 426 (1999).

At the time of trial, Shanblatt had been a professor of electrical engineering at Michigan State University and had taught there for eighteen years. He had bachelor, masters, and doctoral degrees in electrical engineering. He had worked for defendant for six months in the high voltage switch gear division and was involved in a project to determine the amount of sil-

ver plating to place on voltage breakers and switches. He had extensive expertise as an electrical engineer and as a professor in electrical power systems, which includes circuit breakers.

Shanblatt had previously conducted investigations similar to that involved in this case and was familiar with UL 489 standards, because since being asked to consult on this case, he had studied those specific standards that were referenced in the breaker installation instructions. The facts or data on which an expert bases his opinion may be made known to him at or before trial, *Mulholland, supra* at 412, and an opposing party's disagreement with an expert's opinion or interpretation of facts, and gaps in expertise, are matters of the weight to be accorded to the testimony, not its admissibility, *Woodruff v USS Great Lakes Fleet, Inc,* 210 Mich App 255, 259-260; 533 NW2d 356 (1995); *People v England,* 176 Mich App 334, 340; 438 NW2d 908 (1989), aff'd on different grounds sub nom *People v Perlos,* 436 Mich 305; 462 NW2d 310 (1990).

Given Shanblatt's credentials and experience, the trial court did not abuse its discretion in qualifying Shanblatt as an expert. We find no evidence that Shanblatt's testimony confused, rather than aided, the jury. Defendant's challenges are matters of the weight to be accorded Shanblatt's testimony relative to other expert testimony.

VI

Defendant challenges the court's special instructions, requested by plaintiff, regarding implied warranty. When the standard jury instructions do not ade-

quately cover an area, the trial court is obligated to give additional instructions when requested, if the supplemental instructions properly inform the jury of the applicable law and are supported by the evidence. *Stoddard v Manufacturers Nat'l Bank of Grand Rapids*, 234 Mich App 140, 162; 593 NW2d 630 (1999). Supplemental instructions, when given, must be modeled as nearly as practicable after the style of the Standard Jury Instructions and must be concise, understandable, conversational, unslanted, and nonargumentative. *Id.* at 163, citing MCR 2.516(D)(4). A trial court's decision regarding supplemental instructions will not be reversed unless failure to vacate the verdict would be inconsistent with substantial justice. *Grow, supra* at 702.

The challenged instructions stated:

> Now, Members of the Jury, the plaintiff claims that the defendant Westinghouse failed to warn users such as Dean Southgate and David Bouverette that the breaker could fail to make or break simultaneously. . . .
>
> A manufacturer's duty to produce a product which is reasonably fit for its intended or reasonably foreseeable purposes includes a duty to warn purchasers or users of its product about dangers associated with its intended use. *If you find that the defendant's breaker could fail to make or break simultaneously, and you further find that defendant either did not warn or inadequately warned of this potential, you may find that defendant breached its duty to warn and you may find that the defendant's breaker was defective and that defendant breached its implied warranty.*

Defendant argues on appeal that the instructions were slanted because they assumed as true plaintiff's factual assertions that the breaker did not comply with UL 489 standards because it did not make or

break simultaneously and, further, that the breaker had been operated in its intended manner, both contested facts. This was not the basis of defendant's objection to the instructions at trial. At trial, defendant objected to these instructions on the basis that they did not follow the applicable law. Failure to timely and specifically object precludes appellate review absent manifest injustice. *Meyer v Center Line*, 242 Mich App 560, 566; 619 NW2d 182 (2000). We find no manifest injustice.

Jury instructions are reviewed in their entirety to determine whether the theories of the parties and the applicable law were adequately and fairly presented to the jury. *Cacevic v Simplimatic Engineering Co*, 241 Mich App 717, 721; 617 NW2d 386 (2000). When the failure to warn instructions are read in conjunction with the standard jury instructions provided for breach of implied warranty, the instructions adequately and fairly presented the parties' theories and the applicable law.

Even if the special instructions were found improper, the jury's finding in favor of plaintiff on her express warranty claim provides an independent basis for affirming the verdict.

VII

Defendant claims that the jury's verdict was against the manifest weight of the evidence or was improperly influenced by sympathy, passion, or prejudice. A trial court's determination that a verdict was not against the great weight of the evidence will be given substantial deference by this Court. *Severn, supra* at 412. We find no basis for vacating the verdict in this

case, where reasonable support for the verdict is found in the evidence and the verdict returned by the jury is unlikely to have resulted from extraneous influences, passion, prejudice, or sympathy. *Nagi v Detroit United R Co*, 231 Mich 452, 457; 204 NW 126 (1925); *People v Plummer*, 229 Mich App 293, 306; 581 NW2d 753 (1998).

## VIII

Defendant presents as its final argument the contention that the trial court erred in failing to reduce (1) the judgment by the amount of Medar's settlement, and (2) the future damages award to present cash value. This issue is not presented in defendant's statement of questions presented and, thus, this Court need not review this issue. Independent issues not raised in the statement of questions presented are not properly presented for appellate review. *Greathouse v Rhodes*, 242 Mich App 221, 240; 618 NW2d 106 (2000).

Affirmed.